IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| RICHARD J. HILL, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-22 |
| v. | |
| SGT. FREDDIE DAVIS, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants Brian Adams, Officer Brownlee, Freddie Davis, James Deal, Jackson, Shemaury, Mickell, Powell, and Williams' Motion for Summary Judgment, construed as a Motion to Dismiss.[1]  Doc. 58.  The motion is currently unopposed.  The Clerk of Court mailed a Notice to Plaintiff advising him Defendants filed a Motion for Summary Judgment and that a response must be filed by February 11, 2022.  Doc. 62.  The Court's Notice further advised Plaintiff:

---

[1]   Defendants' Motion is docketed as a Motion for Summary Judgment.  However, Defendants also argue dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies.  See Doc. 58.  In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c)").  Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  Id. at 1374–75.  Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b).  Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)").  For this reason, I construe this portion of Defendants' Motion for Summary Judgment as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

    1.    If you do not timely respond to this motion . . ., the consequence may be the Court will deem the motion unopposed, and the Court may enter judgment against you;

    2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence; and

    3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

Id. This Notice was not returned to the Clerk of Court as undeliverable to Plaintiff. The time for Plaintiff to file a response has elapsed, and Defendants' Motion is now ripe for adjudication.

For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants Brian Adams, Officer Brownlee, Freddie Davis, James Deal, Jackson, Shemaury, Mickell, Powell, and Williams' construed Motion to Dismiss and **DISMISS** Plaintiff's Complaint. Doc. 58. Alternatively, I **RECOMMEND** the Court **DISMISS** all of Plaintiff's claims for failure to follow this Court's Order directing him to respond to Defendant Sistrunk's Motion to Dismiss and update his address.[2] Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the

---

[2] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed). This Report and Recommendation constitutes fair notice to Plaintiff his suit is due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining the magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

2

appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. Finally, I **RECOMMEND** the Court **DENY as moot** Defendant Sistrunk's Motion to Dismiss and Motion to Adopt Other Defendants' Motion for Summary Judgment and Defendant Cain's Motion for Summary Judgment.  Docs. 55, 60, 69.

## PROCEDURAL HISTORY

Plaintiff, an inmate proceeding pro se, filed this suit against Defendants asserting claims under 42 U.S.C. § 1983 related to an incident occurring on February 19, 2019.  Doc. 1.  Plaintiff then moved to amend his Complaint to bring claims related to an incident occurring on May 7, 2019, which the Court granted.  Docs. 10, 13.  Plaintiff filed his Supplemental Complaint on June 10, 2019.[3]  Doc. 14 at 4.

Considering Plaintiff's Complaint and his Supplemental Complaint, Plaintiff contends Defendants Davis, Brownlee, Cain, Jackson, Powell, Williams, Miller, Mickell, and Cook violated his Eighth Amendment rights on February 19, 2019, by using excessive force when attempting to handcuff him.  Doc. 1 a 6–7.  Plaintiff alleges Defendants Chambers and Sistrunk failed to intervene to stop the excessive use of force.  Id. at 7.  Additionally, Plaintiff contends on May 7, 2019, Defendants Sistrunk and Jackson used excessive force against Plaintiff by shooting pepper spray into his cell and slamming him to the ground.  Doc. 14 at 2.

---

[3] Though the Court received Plaintiff's Supplement on June 17, 2019, Plaintiff's Supplement is signed June 10, 2019. Doc. 14 at 4. When considering any new claims raised in a supplemental complaint, the applicable date for exhaustion purposes is the date the plaintiff signed the supplemental complaint and not the filing date. Merilien v. Caldwell, No. 3:18-CV-056, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) ("Concluding a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.")).

After conducting frivolity review, the Court dismissed Plaintiff's claims against all Defendants in their official capacities for monetary damages, claims for monetary damages against Defendants Deal and Adams based on failure to protect, and due process claim against Defendant Deal. Doc. 17. However, Plaintiff was permitted to proceed on his Eighth Amendment claims against Defendants Davis, Brownlee, Cain, Jackson, Powell, Williams, Miller, Mikell, Cook, Chambers, and Sistrunk and his claims for injunctive relief against Defendants Deal and Adams. Id.

## BACKGROUND

Plaintiff claims his Eighth Amendment rights were violated by Defendants on February 19, 2019, and May 7, 2019. Docs. 1, 14. Plaintiff was incarcerated at Georgia State Prison at that time and Defendants were employed by Georgia State Prison ("GSP"). Defendants argue they are entitled to summary judgment. Docs. 58, 60, 69. Additionally, Defendants argue Plaintiff failed to exhaust his administrative remedies before bringing suit. Doc. 58. Plaintiff has not responded to any of Defendants' Motions.

There was a grievance process at GSP that is applicable to and utilized for all inmates at the Georgia Department of Corrections ("GDC"). Doc. 58-2 at 1. The GDC general grievance policies are set out in Standard Operating Procedure ("SOP") Policy Number 227.02. Id. The grievance process includes two steps inmates must follow. At Step One, they must submit an original grievance and then, inmates must submit a Central Office Appeal at Step Two. Id. at 2. Under the grievance policy, prisoners must file a grievance (i.e., complete Step One) no later than 10 days from the date he knew, or should have known, of the facts giving rise to grievance. Id. The Statewide Grievance Procedure also provides a grievance filed later than 10 days may be considered upon good cause. Id.

Once a grievance is received, the Warden has 40 days from the date the offender gave the grievance form to the counselor to deliver the decision to the offender.  Id. at 15.  After an inmate receives a Warden's decision on his grievance, an inmate must appeal that grievance by filing a Central Office Appeal within seven days from the date he received the Warden's response.  Id. at 2–3.  However, that time limit may also be waived for good cause.  Id. at 3.

Grievances submitted by an inmate are reflected in an inmate's Grievance History.  Id.  Plaintiff's Grievance History shows he submitted Grievance Number 284663 on March 6, 2019, related to the alleged use of force incident on February 19, 2019.  Id. at 3, 28–32.  Grievance Number 284663 was rejected as untimely filed.  Id.  Plaintiff did not appeal that grievance.  Additionally, Plaintiff submitted Grievance Number 288893 on May 16, 2019, related to the alleged use of force incident on May 7, 2019.  Id. at 4, 63.  Plaintiff was notified his grievance was referred to the Criminal Investigations Division on June 12, 2019.  Id. at 63, 65.  Notably, Plaintiff did not wait for a response to Grievance Number 288893 before moving to amend and filing his Supplemental Complaint.  Docs. 10, 14.  Indeed, Plaintiff admits he had not yet received a response on Grievance Number 28893 when he filed his Supplemental Complaint.  Doc. 14 at 3.

## DISCUSSION

The undersigned must now determine how to address Defendants' construed Motion to Dismiss for Plaintiff's failure to exhaust his administrative remedies and Plaintiff's failure to follow this Court's Order.

**I.    Plaintiff's Failure to Exhaust**

   **A.    PLRA's Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859.

8

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Secondly, exhaustion is not required when an administrative procedure that is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1.  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner

9

show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376 ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.")).

### C.     Applying Turner

All of Plaintiff's claims in his original Complaint and Supplemental Complaint arise from either the February 19, 2019 incident or the May 7, 2019 incident. Plaintiff failed to properly exhaust his administrative remedies for all of these claims before filing this suit. Plaintiff failed to file a timely grievance related to the February 19, 2019 incident and did not appeal the denial of that grievance as untimely once it was rejected. Additionally, Plaintiff did not exhaust his

administrative remedies regarding his claim for the May 7, 2019 incident because he filed suit before receiving a response to his grievance.

### 1. *GSP's grievance policy.*

There was a grievance process at GSP that is applicable to and utilized for all inmates at the GDC. Doc. 58-2 at 1. The GDC general grievance policies are set out in SOP Policy Number 227.02. Id. The grievance process includes two steps inmates must follow. At Step One, they must submit an original grievance and then, inmates must submit a Central Office Appeal at Step Two. Id. at 2. Under the Statewide Grievance Procedure, a prisoner must file a grievance (i.e., complete Step One) no later than 10 days from the date he knew, or should have known, of the facts giving rise to grievance. Id. The Statewide Grievance Procedure also states that a grievance filed later than 10 days may be considered upon good cause. Id.

Once a grievance is received, the Warden has 40 days from the date the offender gave the Grievance Form to the counselor to deliver the decision to the offender. Id. at 15. After an inmate receives a Warden's decision on his grievance, an inmate must appeal that grievance by filing a Central Office Appeal within seven days from the date he received the Warden's response. Id. at 2–3. However, that seven-day time limit may also be waived for good cause. Id. at 3. The grievance procedure applies even if the inmate is transferred to a different facility than the facility which is the subject matter of the grievance. Id.

### 2. *Plaintiff failed to exhaust his administrative remedies.*

#### (a) *Plaintiff failed to properly exhaust his administrative remedies for the February 19, 2019 incident.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Plaintiff alleges he was subjected to excessive force on February 19, 2019, but he did not file a grievance related to the incident until March 6, 2019. Id. at 3, 28, 32. Plaintiff offers no explanation as to why he did not file a grievance within the 10-day period in his grievances or submissions to the Court. Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92. Plaintiff plainly failed to comply with GSP's grievance policy and deadlines. Plaintiff, without explanation, filed a grievance outside the 10 days from when he was allegedly assaulted. To properly exhaust, Plaintiff must file a timely grievance during the administrative proceedings before filing a federal civil action. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

As noted, Plaintiff did not respond to Defendant's construed Motion to Dismiss. Plaintiff did briefly discuss the March 6, 2019 grievance in his original Complaint. There, Plaintiff states he filed a grievance and acknowledges it was denied. Doc. 1 at 5. Plaintiff also states Defendant Deal said Plaintiff could not appeal the denial and has written proof of Deal's statements. Plaintiff implies Deal's comments prevented him from appealing the denial of his grievance or alleviated the need for him to attempt to appeal. Even if that Plaintiff's position, and the Court takes Plaintiff's statements as true, it does not show Plaintiff properly exhausted. Plaintiff does not explain why he did not file a timely grievance in the first place. Plaintiff does not argue his grievance was improperly denied as untimely. The grievance process plainly requires an inmate file his grievance within 10 days from the date he knew, or should have known, of the facts giving rise to the grievance, and Plaintiff did not do that. Doc. 58-2 at 2. Regardless of

Plaintiff's ability to appeal the denial of his grievance, Plaintiff did not properly exhaust available administrative remedies because he did not file a timely grievance.

> (b) *Plaintiff failed to properly exhaust his administrative remedies for the May 7, 2019 incident.*

Plaintiff's claims arising from the May 7, 2019 incident are due to be dismissed under Turner's first step.[4] Plaintiff explains he filed his Supplemental Complaint before receiving a response to his Grievance Number 288893. Doc. 14 at 3. Plaintiff claims he filed his Supplemental Complaint before he received a response because of the Court's deadline related to his motion to amend. Id. However, this does not excuse Plaintiff's failure to exhaust before suing. First, Plaintiff moved to amend related to this incident before even filing a grievance. Plaintiff filed his motion to amend on May 15, 2019, doc. 10 at 2, but did not file his grievance until May 16, 2019, doc. 58-2 at 63, 66. Moreover, Plaintiff never requested an extension to his time to amend his claims. Instead, Plaintiff rushed to bring his claim related to the May 7, 2019 incident and forewent his administrative remedies in doing so.

That is, Plaintiff did not properly exhaust because he did not wait for the response to the grievance before bringing a claim related to the May 7, 2019 incident. Bryant, 530 F.3d at 1378;

---

[4] Plaintiff added the May 7, 2019 claim when supplementing his Complaint. While the Eleventh Circuit has stated, "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint," Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012), it is unclear whether this language extends to situations where a plaintiff initially brings fully exhausted claims and then seeks to bring later exhausted claims via a supplement or amendment. At least one district court has declined to apply Smith v. Terry to a situation where a plaintiff added newly exhausted claims to an action that was properly exhausted at the time of filing. See Brant v. Reddish, Nos. 3:13-cv-412, 2019 WL 4600366, at *11 (M.D. Fla. Sept. 23, 2019) (holding "[a] prisoner . . . who fully exhausts a claim before filing suit[] may amend his complaint to add a later arising, related claim providing the prisoner first fully exhausts his administrative remedies as to that new claim"). The undersigned need not resolve the issue here because Plaintiff plainly failed to exhaust prior to filing his initial Complaint or supplementing his Complaint with the May 7, 2019 claim. Thus, even assuming Plaintiff could later add a properly exhausted claim via amendment or supplementation, he still failed to properly exhaust.

Sewell, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted)).  Thus, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to his May 7, 2019 claims under step one of Turner.  Consequently, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[5]

### III.     Dismissal for Failure to Follow This Court's Order

Plaintiff's claims should also be dismissed for failure to follow this Court's Orders to respond to Defendant Sistrunk's Motion to Dismiss or update his address with the Court.  A district court may dismiss a plaintiff's claims sua sponte pursuant to either Federal Rule of Civil Procedure 41(b) or the court's inherent authority to manage its docket.  Link v. Wabash R.R. Co., 370 U.S. 626 (1962);[6] Coleman v. St. Lucie Cnty. Jail, 433 F. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)).  In particular, Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where he has failed to prosecute those claims, comply with the Federal Rules of Civil Procedure or local rules, or follow a court order.  Fed. R. Civ. P. 41(b); see also Coleman, 433 F. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct.

---

[5]     Because Plaintiff's claims are due to be dismissed for failure to exhaust his administrative remedies, the undersigned declines to address Defendants' additional summary judgment arguments.

[6]     In Wabash, the Court held a trial court may dismiss an action for failure to prosecute "even without affording notice of its intention to do so." 370 U.S. at 633.  Nonetheless, in the case at hand, the Court advised Plaintiff his failure to comply with the Court's Order or to respond to the Motion to Dismiss could result in dismissal of this action.  Doc. 56.

17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)); cf. Local R. 41.1(b) ("[T]he assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice[,] . . . [based on] willful disobedience or neglect of any order of the Court." (emphasis omitted)).  Additionally, a district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits."  Brown v. Tallahassee Police Dep't, 205 F. App'x 802, 802 (11th Cir. 2006) (quoting Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)).

It is true dismissal with prejudice for failure to prosecute is a "sanction . . . to be utilized only in extreme situations" and requires a court to "(1) conclud[e] a clear record of delay or willful contempt exists; and (2) mak[e] an implicit or explicit finding that lesser sanctions would not suffice."  Thomas v. Montgomery Cnty. Bd. of Educ., 170 F. App'x 623, 625–26 (11th Cir. 2006) (quoting Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995)); see also Taylor v. Spaziano, 251 F. App'x 616, 619 (11th Cir. 2007) (citing Morewitz, 62 F.3d at 1366).  By contrast, dismissal *without* prejudice for failure to prosecute is not an adjudication on the merits, and, therefore, courts are afforded greater discretion in dismissing claims in this manner.  Taylor, 251 F. App'x at 619; see also Coleman, 433 F. App'x at 719; Brown, 205 F. App'x at 802–03.

While the Court exercises its discretion to dismiss cases with caution, dismissal of this action is warranted.  See Coleman, 433 F. App'x at 719 (upholding dismissal without prejudice for failure to prosecute § 1983 complaint where plaintiff did not respond to court order to supply defendant's current address for purpose of service); Taylor, 251 F. App'x at 620–21 (upholding dismissal without prejudice for failure to prosecute, because plaintiffs insisted on going forward with deficient amended complaint rather than complying or seeking an extension of time to

15

comply with court's order to file second amended complaint); Brown, 205 F. App'x at 802–03 (upholding dismissal without prejudice for failure to prosecute § 1983 claims where plaintiff failed to follow court order to file amended complaint and court had informed plaintiff that noncompliance could lead to dismissal).

Plaintiff failed to follow this Court's Order or to otherwise respond to Defendant Sistrunk's Motion to Dismiss, despite the Court and Defendant serving Plaintiff and being forewarned of the consequences of his failure to do so. Doc. 56 (Ord., dated Jan. 5, 2022, informing Plaintiff, under Local Rule 7.5 "[f]ailure to respond . . . shall indicate that there is no opposition to a motion."). Additionally, in its Order granting Plaintiff *in forma pauperis* status, the Court advised Plaintiff he was to immediately inform the Court in writing of any change in his address and warned Plaintiff his failure to do so would result in the dismissal of his case. Doc. 3 at 3. Plaintiff's address is listed as: Smith State Prison, PO Box 726, Glenville, Georgia 30427. Doc. 52. However, the Georgia Department of Corrections' web site shows Plaintiff is currently incarcerated at Dodge State Prison. See www.dcor.state.ga.us (follow "Find an Offender" hyperlink; then search for "Hill, Richard") (last visited May 17, 2022).

Thus, the Court should **DISMISS** Plaintiff's Complaint, docs. 1, 14, for failure to follow this Court's Orders—specifically, his failure to respond to Defendant Sistrunk's Motion to Dismiss and his failure to update his address—and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's

order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of these Defendants' construed Motion to Dismiss and Plaintiff's lack of opposition thereto, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants Brian Adams, Officer Brownlee, Freddie Davis, James Deal, Jackson, Shemaury Mikell, Powell, and Williams' construed Motion to Dismiss and **DISMISS** Plaintiff's Complaint. Doc. 58. Alternatively, I **RECOMMEND** the Court **DISMISS** all of Plaintiff's claims for failure to

follow this Court's Order directing him to respond to Defendant Sistrunk's Motion to Dismiss and update his address. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. Finally, I **RECOMMEND** the Court **DENY as moot** Defendant Sistrunk's Motion to Dismiss and Motion to Adopt Other Defendants' Motion for Summary Judgment and Defendant Cain's Motion for Summary Judgment. Docs. 55, 60, 69.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of May, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA